THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

RALPH M. HOYT.

*Filed at Springfield May 12, 1887.*

| | |
|---|---|
| 122 | 369 |
| 152 | 467 |
| 155 | 634 |
| 45a | 640 |
| 122 | 369 |
| 134 | 213 |
| 122 | 369 |
| 48a | 245 |
| 122 | 369 |
| 59a | 120 |
| 122 | 369 |
| 70a | 334 |
| 122 | 369 |
| 76a | 600 |
| 122 | 369 |
| 193 | [1]177 |
| 122 | 369 |
| e209 | [2]130 |

1. FELLOW-SERVANTS—*who to be so regarded—as to locomotive engineer and car inspector.* The servants of the same master, to be co-employes, so as to exempt the master from liability on account of injuries to one resulting from the negligence of another, must be directly co-operating with each other in a particular business,—that is, in the same line of employment,—or their mutual duties must bring them into such habitual association that they may exercise a mutual influence on each other promotive of proper caution.

2. It was the duty of a car inspector to inspect freight cars on their arrival at the yards of the company. As soon as a train arrived the superintendent of that department directed the inspector to go upon the cars and begin the work of inspection, which he did on this occasion as soon as the train came to a full stop, and when about to step from one car to another, the engineer, without warning, suddenly started the engine with such unusual force that the train parted, and the inspector fell upon the track and was injured. The proof showed that when a freight train came to a certain place, as it did on the particular occasion, the engineer's duty'

24—122 ILL.

in respect to the train ceased, and it was his duty to take his locomotive to the engine house, and after the inspection the train would be broken up by a switch-engine and set apart: *Held*, that the engineer and inspector were not fellow-servants engaged in the same employment, and that the railway company was liable for the injury to the inspector, he having been found to have exercised due care.

3. In such case, the duties of the engineer ceased at or before the inspector's began, so that it was impossible for the one to have exercised any influence whatever over the other, and therefore an instruction based upon the theory of their being fellow-servants was properly refused.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of McLean county; the Hon. O. T. REEVES, Judge, presiding.

Messrs. WILLIAMS & CAPEN, and Messrs. FIFER & PHILLIPS, for the appellant:

The common master is not liable to an employe for an injury received from the negligence of another employe in the same line of service, if the master has used reasonable care in the selection of his employes, and provided one servant does not represent the master as to the other servant. *Honner* v. *Railroad Co.* 15 Ill. 550; *Railroad Co.* v. *Cox*, 21 id. 20; *Railway Co.* v. *Troesch*, 68 id. 545; *Railway Co.* v. *Durkin*, 76 id. 395; *Railway Co.* v. *Swett*, 45 id. 197; *Railway Co.* v. *Taylor*, 69 id. 461; *Railway Co.* v. *Moranda*, 93 id. 302; *Railroad Co.* v. *Keefe*, 47 id. 108; *Railway Co.* v. *Britz*, 72 id. 256.

Every person who undertakes to work in a dangerous employment, undertakes to and does assume all the ordinary risks of such employment. *Railway Co.* v. *Donahue*, 75 Ill. 106; *Railroad Co.* v. *Welch*, 52 id. 183; *Railway Co.* v. *Flanagan*, 77 id. 365; *Railway Co.* v. *Durkin*, 76 id. 395; Cooley on Torts, 541, 551, 552, and cases cited.

Fellow-servants of a common master in the same line of employment, are employes whose ordinary occupations in such employment bear such relations to each other that the careless or negligent conduct of one endangers the safety of the other,

where neither of them is the representative of the master as to the other. *Railroad Co.* v. *Murphy,* 53 Ill. 336; *Railroad Co.* v. *Hoyt,* 16 Bradw. 237; *Valtez* v. *Railway Co.* 85 Ill. 500; *Ryan* v. *Railway Co.* 60 id. 17; *Railroad Co.* v. *Keefe,* 47 id. 110; *Railroad Co.* v. *O'Bryan,* 15 Bradw. 134; *McAndrews* v. *Burns,* 39 N. H. 117; *Baird* v. *Pettit,* 70 Pa. St. 447; *Railway Co.* v. *Scheuring,* 4 Bradw. 533; *Railroad Co.* v. *Moranda,* 93 Ill. 302; *Coal Co.* v. *Jones,* 86 Pa. St. 432; *Randall* v. *Railroad Co.* 109 U. S. 478; *Wright* v. *Railroad Co.* 25 N. Y. 562.

Cases closely analogous to the one at bar, so far as the question of fellow-servants is concerned, are *McCosker* v. *Railroad Co.* 84 N. Y. 77; *Collins* v. *Railroad Co.* 30 Minn. 31; *Gormley* v. *Railroad Co.* 72 Ind. 31; *Coon* v. *Railroad Co.* 5 N. Y. 492; *Holden* v. *Railroad Co.* 129 Mass. 268; *Sammon* v. *Railroad Co.* 62 N. Y. 251; *Vick* v. *Railroad Co.* 95 id. 267; *Bull* v. *Railroad Co.* 67 Ala. 206; *Railroad Co.* v. *Doyle,* 60 Miss. 977; *Railroad Co.* v. *Wachter,* 60 Md. 395; *Hughes* v. *Railroad Co.* 27 Minn. 137; *Railroad Co.* v. *Hammersley,* 28 Ind. 371; *Morgan* v. *Railway Co.* (L. R.) 1 Q. B. 140.

Mr. M. W. PACKARD, and Messrs. STEVENSON & EWING, for the appellee:

Whether the appellee and the engineer were fellow-servants, is a question of fact, which is settled by the verdict. *Moranda case,* 108 Ill. 581.

The case of *Chicago and Western Indiana Railroad Co.* v. *Bingenheimer,* 116 Ill. 226, on the question of negligence, is exactly in point with the case at bar.

Cases similar to the one at bar, and illustrative of it, are *Railroad Co.* v. *Bingenheimer,* 116 Ill. 226; *Railway Co.* v. *Ross,* 112 U. S. 377; *Railway Co.* v. *Moranda,* 93 Ill. 302; *Railroad Co.* v. *Powers,* 74 id. 341; *Railroad Co.* v. *May,* 108 id. 288; *Railroad Co.* v. *Bliss,* 6 Bradw. 411; *Railroad Co.* v. *Hoffman,* 97 Ill. 287; *Rolling Mill Co.* v. *Johnson,* 114 id. 57.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought by Ralph M. Hoyt, in the circuit court of McLean county, against the Chicago and Alton Railroad Company. It was brought to recover for personal injuries sustained by plaintiff, alleged to have been caused by the negligent conduct of defendant's servants in charge of a freight train. The judgment rendered in the circuit court, in favor of plaintiff, was affirmed in the Appellate Court, and as the case comes before this court, only questions of law can be considered.

It seems plaintiff was employed in the yards of the company, at the station where the accident occurred, and had been for many years prior to the time he was injured. His duty was to inspect freight cars on their arrival at the yards. The evidence tends to show, and that fact will be regarded as proved, the superintendent of that department directed him to go upon the cars immediately upon their arrival, and begin the work of inspection. That custom plaintiff had observed for many years. On the morning of the happening of the accident, a freight train came into the yards, and immediately upon its coming to a full stop, plaintiff went upon the car next the engine and commenced his usual work of inspecting the cars, and was about to step from the second car to the third car, when the engineer, without warning, suddenly started his engine with such unusual force that the train parted, and plaintiff, falling on the track, received severe and permanent injuries. Plaintiff testified the "jerk" "was so violent it almost raised the car from the track." On this branch of the case no question is made, nor can any be made in this court, against the finding of the jury that plaintiff was observing due care for his personal safety, and that it was the wrongful conduct of the engineer that caused the accident.

The defence insisted upon, both at the trial and in this court, is, that plaintiff, and the engine-driver, whose negligence is

alleged to have caused the injury, were fellow-servants of a common master, and engaged in the same line of employment, and therefore there could be, in law, no recovery, on the principle one servant of a common master engaged in the same service can not recover for the negligence of his fellow-servant. The point raised was most definitely made at the trial by an instruction stating the law applicable to fellow-servants, and which, it is insisted, had it been given, and had the jury been controlled by it, would have secured a verdict for defendant. That instruction the court modified, and, as modified, counsel for defendant refused to have it read to the jury. So the case may be considered as though the court refused to give the instruction. Assuming, then, that the instruction, as asked, states the law in relation to fellow-servants accurately, the question arises, was the defendant prejudiced by the refusal of the court to give it. That involves the inquiry whether it is applicable to the facts, or, what is the same thing, does the question whether plaintiff and the engine-driver were fellow-servants, fairly arise in the case. A brief reference to the evidence will be necessary to a solution of the question.

There is evidence tending to show, and the facts it tends to establish will be regarded as proved, that when a train got to a certain place, as this one did that morning, "it is the usual thing for the engine to go to the round-house—that is the usual practice." The switch-engine would then come and set the cars in the proper place. Of course, the engine-driver would be bound to obey the yard-master, and if he received a signal to move to another locality, no doubt he would be bound to observe it. But the evidence is full to the point, when the engine-driver came to a certain place and stopped the train, it "was his duty to go to the engine house." One reason that is stated why plaintiff was required to go upon trains so soon as they should be stopped, to do the work of inspecting them, was, that after the train should be broken up by the switch-engine and set apart, it would be difficult to find those that had not

been inspected, or to ascertain when the work would be completed.

Regarding these facts, which the evidence tends to establish, as having been found in favor of plaintiff, it seems clear the duties of the engine-driver in connection with the train ceased at or before the time it was plaintiff's duty to go upon it to begin his work of inspection. On that hypothesis, how is it possible the engine-driver and plaintiff could be fellow-servants engaged in a common service? Inspecting cars after they are delivered in the yards can have no relation or connection with the running of trains to distant points. It is not the same service at all. A car inspector, under such circumstances, is no more a fellow-servant with an engine-driver than any workman in the shops who may have assisted, in the first instance, in making the car. It was said by this court, in *Rolling Mill Co.* v. *Johnson*, 114 Ill. 57, that the servants of the same master, to be co-employes so as to exempt the master from liability on account of injuries sustained by one resulting from the negligence of the other, shall be directly co-operating with each other in a particular business,—*i. e.*, the same line of employment,—or that their usual duties shall bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution. Adhering, as is done, to the correctness of the rule stated, it is clear the case in hand does not come within its operation. Plaintiff and the engine-driver were not engaged in the same business at all. It was distinct and wholly different, and had each continued in his particular business for any indefinite period, it is hardly probable they would have been brought into any relation where one might have exercised an influence over the other promotive of proper caution. In the very nature of the business each was engaged in, it was impracticable for one to have had any influence over the other promotive of proper caution, or otherwise. They were strangers to each other, and might have remained so for an indefinite time, so far as any-

thing in their business relations would have brought them together. It is true they might have been fellow-servants in the strictest sense, and yet they might not have been associated an hour before the happening of the injury. What is meant is, if the parties continue to be engaged in a common service they will be habitually associated, so that they may exercise any influence over each other promotive of common safety. That never could have occurred in this case, for the obvious reason the duties of the engine-driver ceased at or before plaintiff's would begin, so that it would be impossible for one to exercise any influence whatever over the other. The doctrine of the refused instruction could have no application to the facts of the case, and had the court given it, the effect would have been to direct the attention of the jury to an issue not really involved. There was therefore no error in refusing to give the instruction, and whether the modification made by the court was correct or not need not now be considered. So far as the law applicable to fellow-servants had or could have any application to the facts of the case, it was stated with sufficient fullness by the court in the instructions given. In the view taken, defendant was not prejudiced by the refusal of the court to instruct as it was asked to do.

As respects the fourth instruction of the series given for plaintiff, it may be it contains one or more expressions not entirely accurate; but in view of the facts, it can hardly be said it worked any injury to defendant. There was but little, if any, contradictory evidence concerning the material facts upon which plaintiff's right to recover rests. It is seen, plaintiff has a clear right of action, and the judgment in his favor ought not to be reversed for a mere inaccurate expression in an instruction given by the trial court, when it can be seen it did no harm.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*