LOUISVILLE, EVANSVILLE & ST. LOUIS CONSOLIDATED
RAILROAD COMPANY

V.

L. H. HAWTHORN.

*Master and Servant—Negligence of Master—Personal Injury to Servant—Conflict of Evidence—Fellow-servants.*

The plaintiff was employed by defendant, with others, under charge of a foreman, in erecting fences along its right of way. While attempting to climb upon a car loaded with posts, under orders from his foreman,

to assist in throwing off the same, the train suddenly started backward and appellee was injured. In an action brought against the defendant to recover damages for such injury, this court holds that the jury was warranted by the evidence in finding that plaintiff was free from negligence, that the injury was caused by the negligence of defendant's engineer, and that such engineer and plaintiff were not fellow-servants.

[Opinion filed December 7, 1892.]

APPEAL from the Circuit Court of Marion County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

Appellee brought this action on the case against appellant to recover damages for injuries to his person. The declaration contained five counts. In the first count it is averred that plaintiff and other workmen were employed by defendant to construct a wire fence along its right of way. That plaintiff and said workmen were in charge of one Risley, as foreman and overseer for defendant, who was given full power and authority to direct and control plaintiff and said workmen in and about the construction of said fence. That defendant was then and there possessed of an engine and train of freight cars, under the care and management of divers other servants of defendant, who caused said engine and train to stop at a point where plaintiff and said other workmen were constructing said fence, and the defendant was then and there possessed of a lot of fence posts to be used in the construction of the fence, and then and there had the posts upon a car in said train. That Risley, as such foreman and overseer, ordered plaintiff and said other workmen to get on said train and unload the car loaded with fence posts, as he had a right and authority to do. That plaintiff being so ordered by said Risley, it became his duty to get upon the train and unload said posts, and he thereupon, then and there, using due care and caution, attempted to climb up and get upon said train for the purpose of unloading said posts. That defendant then and there had, in charge of said locomotive attached to the train, its engineer and servant and it was his duty to keep the same and said train of cars motionless and still until plaintiff could climb upon said car.

It is next averred the engineer totally disregarded this duty, and carelessly and negligently set said engine in motion, and started the train of cars while plaintiff so attempted to climb upon said train, and by reason of such negligence of defendant by its servant, one of the cars caught the left foot of plaintiff under the wheels of the same, and crushed and mangled his foot and leg, etc.   The details of the effects of the injury, including amputation of the leg, are then set out in full.   In the second count the averments are substantially like those in first count, except it is averred in second count that plaintiff was employed by defendant as a laborer in building said fence, "under the control and direction of one Fred Risley, foreman of plaintiff, and the men with whom plaintiff was then and there associated in the building of said fence, and that said Fred Risley had full control and authority over plaintiff, and the other men employed in and about the building of said fence, with full power and authority to discharge them, and that said Fred Risley stood to the plaintiff and his associates as the representative of the defendant, which was their common master."

It is also further averred in second count that plaintiff, by order of said foreman, was attempting to climb on the car loaded with fence posts, using all due care and caution for his own safety, and the engineer, by gross negligence, set the engine and train in motion before plaintiff had succeeded in getting on, whereby he was caused to lose his foothold, and was thrown with great force and violence to said track, and was injured, etc.

In the third count it is charged, as additional negligence of engineer, the train was suddenly started backward without ringing bell or sounding whistle or apprising plaintiff by any signal, of danger to which he would be subjected by motion of said engine and train.

The fourth count sets out the negligence causing the injury substantially as in the first.

In the fifth count it is averred, in addition to the other acts of negligence, that defendant failed in its duty to provide suitable steps and handles on the side and ends of car

loaded with posts, so that its employes might safely, and without danger to their persons, climb into and off from said cars.

To this declaration, the formal parts of which and some of the details are omitted in the foregoing synopsis, the general issue was pleaded and a *similiter* added. Upon the issue thus joined the cause was tried by a jury and defendant found guilty. Plaintiff's damages were assessed at $2,000, for which sum and costs of suit judgment was entered against defendant and it took this appeal.

Messrs. IGLEHART & TAYLOR and W. & E. L. STOKER, for appellant.

Messrs. FRANK F. NOLEMAN and S. L. DWIGHT, for appellee.

MR. JUSTICE GREEN. It is contended, on behalf of appellant, that this judgment should be reversed, because the negligence charged in either count of the declaration was not proved. That even if such negligence was established by the evidence, yet plaintiff was guilty of such contributory negligence as would bar his recovery, and even if these contentions are not tenable the appellee was not entitled to recover because the engineer in charge of the engine and the appellee were fellow-servants at the time of the injury, and therefore if the negligence of the engineer caused the accident, such negligence was a hazard voluntarily assumed by appellee and incident to his employment. Appellee and these other men were employed by appellant as laborers in the construction of a wire fence, along its right of way; their duties were to dig post holes, set posts, stretch and fasten wires and unload from car, posts brought to be put in said fence; when required to do so.

They had nothing to do with track building or repairing and they were under the exclusive control and direction of one Risley, a foreman employed by appellant, who was by it given charge and control of them. Just before the accident, this foreman ordered appellee and the three other men

to go to a crossing and wait there for a train he was about to flag to stop at that point, and when the train stopped to get on a car loaded with posts, and then as the train moved to unload and distribute the posts along the side of the track to be used in said fence.   In obedience to this order the four men went to the point indicated.   The train was flagged by the foreman, but ran a little distance past the crossing.   Two of the fence gang climbed upon a box car in the train as it went slowly by them, but appellee and one Crocker followed along by the side of the train on the outside of track until the train stopped.   The car containing the posts was next behind the tender; it was an ordinary coal car.   Posts were placed upright as standards on the inside and on each side of this car, and the other posts were piled up between them.   It was necessary for plaintiff to get on top of this pile in order to unload them, and to do this he would have to go in between cars, climb up on a narrow platform at the rear end of the coal car, and from thence up to the top of the load.   This was the only practicable and expeditious method.   He could not get up at the side of the car.   When the train stopped, Crocker climbed upon the platform, and plaintiff, in attempting to get up, stepped with his left foot on the rail at the rear end of the car.   At this time the train was moved back without ringing the bell or sounding the whistle and his foot was caught between the car wheel and rail; he was thus thrown down and the wheel ran upon his leg up to the knee and crushed it so that amputation became necessary and this operation was performed.

There is a conflict in the evidence as to how the car was moved back.   The engineer testified :   " My engine came to a standstill and it did not move until I got a signal from the brakeman to pull off of the man that was hurt.   From the time I stopped the engine till I received that signal from the brakeman, the engine had not moved or been reversed."   This witness is evidently mistaken.   Appellee was not injured by the train moving ahead, and not until after it had been brought to a standstill.   If after that the train

was not moved, then appellee was not injured by it at all. But another witness for defendant testified there was a little slack in the train when it stopped; it ran back a little. Crocker and appellee, both of whom had an opportunity and were in a position to observe and know when the train stopped and when and how it was moved again, testified it had come to a full stop, and Crocker said the slack was all taken up before he attempted to get on the car, and both testified the train was standing still when Crocker was on the narrow platform at the end of the coal car, and appellee was starting to climb up; that the train was not moving as he stepped on the rail. Immediately after, the train moved back, without signal or warning, upon appellee, and threw him down and injured him as charged.

The preponderance of the evidence justified the jury in finding the engineer knew these men would have to get on the coal car before they could unload the posts, and he ran the train past the point where they were to commence unloading. That in the attempt to run it back to that point after he had brought it to a full stop he carelessly and negligently reversed his engine, caused the train to move back without ringing the bell or sounding the whistle and without informing himself the men had got on the train and out of danger, and thereby caused the accident and injury to appellee. The negligence of the engineer, as charged, was established by the proof, and we fail to find any evidence in the record showing that appellee was guilty of contributory negligence. The appellant insists, however, that the engineer and appellee were fellow-servants, and hence this suit can not be maintained. The definition of the term fellow-servant is a question of law, but it is always a question of fact whether a given case falls within that definition. Our Supreme Court have defined this term many times in reported cases, a few of which will now be referred to.

In C. & A. R. R. Co. v. Hoyt, 122 Ill. 369, it is said in the opinion "that servants of the same master, to be co-employes so as to exempt the master from liability on

account of injuries sustained by one, resulting from the neg-ligence of the other, shall be directly co-operating with each other in the same line of employment, or that their usual duties shall bring them into habitual association, so that they may exercise a mutual influence upon each other pro-motive of a proper caution." What is meant is, if the par-ties continue to be engaged in a common service, they will be habitually associated, so that they may exercise an in-fluence over each other promotive of a common safety.

In the case of N. C. R. M. Co. v. Johnson, 114 Ill. 57, the following language is used in the opinion:

" The idea is that the relation between the servants must be such that each as to the other, by the exercise of ordi-nary caution, can either prevent, or remedy the negligent acts of the other, or protect himself against its consequences, and of course where there is no right or no opportunity of super-vision, or when there is no independent will, and no right or opportunity to avoid the negligent acts of another, without disobedience to the orders of his immediate superior, the doctrine can have no application."

This case is cited and approved in C. & N. W. Ry. Co. v. Snyder, 117 Ill. 376, 128 Ill. 655; and in C. & A. R. R. Co. v. Kelly, 127 Ill. 637.

The facts disclosed by this record warranted the jury in finding that the appellee and the engineer in charge of the train were not fellow-servants, as defined in the cases cited, at the time appellee was struck and injured. The usual duties of the train men required them to operate a freight train on appellant's track, while appellee was employed to build a fence on its right of way; hence the usual duties of the engineer and of the appellee were not in the same line of employment and did not bring them into habitual associa-tion; nor were they directly co-operating in the same line of employment at the time appellee was struck. The order given him by the foreman imposed the duty to throw off posts as the train moved along. This duty he had not com-menced to perform when injured.

In C. & A. R. R. Co. v. Hoyt, 122 Ill. 369, a car inspector

brought the suit. His duties required him to inspect cars on incoming freight trains, and it was the duty of the engineer of such train to detach the engine on arriving in the yard. The engine of the train in question remained attached thereto, until plaintiff boarded the train, when the engineer started it suddenly, and plaintiff was thereby thrown off and injured.

The court say that the engineer's duty had ceased when the inspector went upon the train to begin the work of inspection, and he and the engineer were not fellow-servants. They were not co-operating, because the duties of one had ceased, and in the case at bar there was no co-operation, because neither the engineer nor appellee had commenced the performance of the work necessary to be done, in order to unload and distribute the posts. We might also properly say the facts establish a case under the law as laid down in N. C. R. M. Co. v. Johnson, *supra*, where the doctrine concerning fellow-servants can have no application. Moreover, the evidence justified the jury in finding that appellant, in failing to provide a step or handle on the coal car whereby appellee could get upon the platform thereof without going between the cars, was guilty of a violation of the duty imposed by law, requiring it to furnish reasonably safe and suitable appliances for the use of its servants, and that such negligence caused the injury.

We find no error in the ruling of the court in giving and refusing instructions requiring a reversal, and the evidence sustains the verdict. The judgment is affirmed.

*Judgment affirmed.*